

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------- X

CRAIG ANDREW NEEF,

                      Plaintiff,

             -against-

THE CITY OF NEW YORK, a municipal entity;
MICHAEL BLOOMBERG, Mayor of the City of New
York; RAYMOND KELLY, New York City Police
Commissioner; DAVID COHEN, Deputy Commissioner for
Intelligence for the New York City Police Department;
JOSEPH ESPOSITO, Chief of Department, New York City
Police Department; THOMAS GRAHAM; Commander,
Disorder Control Unit, New York City Police Department;
JOHN COLGAN, Deputy Chief and Commanding Officer,
Pier 57; STEPHEN HAMMERMAN, Deputy
Commissioner for Legal Matters, THOMAS DOEPFNER,
Assistant Deputy Commissioner for Legal Matters,
New York City Police Department; NYPD Special
Counsel RUBY MARIN-JORDAN; JACK MCMANUS,
Assistant Chief, New York City Police Department;
Sergeant SEAN O'CONNOR; New York City
Police Officer RICHARD GIOIA (Shield No. 6099);
New York City UNDER COVER Police Officer
(Shield No. 2406); NYPD Inspector KEVIN WARD;
NYPD Inspector  THOMAS DIRUSSO; New York City
Police Officer RUSSELL JOHN (Shield No. 31399);
JOHN DOES 1-10, New York City Police Officers;
RICHARD ROES 1-10, New York City Police
Supervisors, and/or Commanders, individually and in
their official capacity,

                      Defendants.

-------------------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL
DEMANDED**

RECEIVED

AUG 2 9 2007

U.S.D.C. S.D. N.Y.
CASHIERS

ECF Case

## **PRELIMINARY STATEMENT**

    1.     This is a civil rights action in which the plaintiff, CRAIG ANDREW NEEF, seeks

relief for defendants' violation, under color of state law, of his rights, privileges and immunities

secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First, Fourth, Fifth, Sixth and

Fourteenth Amendments to the United States Constitution. These violations, committed against

plaintiff during the 2004 Republican National Convention in New York City ("the RNC"), include,

*inter alia*, (1) false arrest and imprisonment, (2) being subjected to defendants' policy of

indiscriminate mass arrest without an individualized determination of probable cause, (3) excessive and unreasonable use of force in effecting plaintiff's arrest, (4) unlawful and unreasonable search, (5) excessive and unnecessarily prolonged detention intended to create delay for delay's sake, and (6) unreasonably punitive and forceful conditions of confinement that resulted from defendants' lack of reasonable care and deliberate indifference, all of which were inflicted on plaintiff because of his participation, or perceived participation, in First Amendment protected activity.

2.     In promulgating and implementing these policies, defendants clearly knew that during the relevant period many thousands of people would converge in New York City to demonstrate their opposition to the military, foreign and domestic policies of the current United States government and to the nominee for president from the Republican Party, George W. Bush. Although some chose to engage in acts of civil disobedience to express their opposition to these policies and to the President, the overwhelming majority of those arrested, including plaintiff NEEF, either expressed such opposition within the law and in a manner that followed the instructions and directions of NYPD police officers, or merely happened to be in the vicinity of what the NYPD perceived to be protest activity.

3.     Plaintiff seeks: (i) a declaratory judgment that the policies, practices and/or customs described herein violate the First, Fourth, Fifth, Sixth and Fourteenth Amendments; (ii) injunctive relief ordering the destruction of all fingerprints, in whatever form existent, taken of plaintiff during the RNC, including a request by the NYPD that plaintiff's fingerprints transmitted to and retained by the New York State Division of Criminal Justice Services, the FBI and any other law enforcement agency likewise be destroyed; (iii) injunctive relief ordering the destruction and/or expunging of all plaintiff's RNC arrest records, including all law enforcement records or database entries referencing plaintiff's RNC arrests; (iv) compensatory damages for the injuries caused by defendants' unlawful conduct; (v) punitive damages assessed against the individual defendants to deter such intentional or reckless deviations from well-settled constitutional law; (vi) an award of attorneys' fees and costs; and (vii) such other relief as this Court deems equitable and just.

## JURISDICTION

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

5.      Plaintiffs' claim for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

7.      Plaintiff demands a trial by jury in this action on each and every one of his claims.

## PARTIES

8.      Plaintiff CRAIG ANDREW NEEF is a resident of Caramel, Indiana.

9.      Defendant CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

10.      Defendant MICHAEL BLOOMBERG is, and was all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and is responsible, in whole and/or in part, for the creation implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is used in both his individual and official capacities.

11.      Defendant RAYMOND KELLY is, and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs

3

complained of herein. He is sued individually and in his official capacity.

12.    Defendant DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

13.    Defendant JOSEPH ESPOSITO is, and was at all times relevant herein, Chief of Department of the New York City Police Department. He is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

14.    Defendant THOMAS GRAHAM is, and was at all times relevant herein, Commander of the Disorder Control Unit of New York City Police Department. He is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

15.    Defendant JOHN J. COLGAN is a Deputy Chief in the NYPD and was the senior official overseeing the NYPDs' operations at Pier 57. He is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

16.    Defendant STEPHEN HAMMERMAN is, and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17.    Defendant THOMAS DOEPFNER is, and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and

4

enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

18.     Defendant RUBY MARIN-JORDAN is, and was at all times relevant herein, Special Counsel to the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in his official capacity.

19.     Defendant JACK MCMANUS is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party for general oversight of the NYPD's operations during the relevant period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

20.     Defendant NYPD Sergeant SEAN O'CONNOR is, and was at all times relevant to this complaint, a sergeant employed by the NYPD. He is sued in his individual and in his official capacity.

21.     Defendant New York City Police Officer RICHARD GIOIA (Shield No. 6099) is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued in his individual and in his official capacity.

22.     Defendant New York City UNDER COVER Police Officer (Shield No. 2406) is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued in his individual and in his official capacity.

23.     Defendant NYPD Inspector KEVIN WARD is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued in his individual and in his official capacity.

5

24.    Defendant NYPD Inspector THOMAS DIRUSSO is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued in his individual and in his capacity.

25.    Defendant New York City Police Officer RUSSELL JOHN (Shield No. 31399) is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued in his individual and his official capacity.

26.    Defendants JOHN DOES 1-10 are, or were at all times relevant to this complaint, police officers employed by the NYPD. They are sued individually and in their official capacity. JOHN DOES 1-10 include individuals, known to defendant City of New York and the New York City Police Department, who assisted the individual defendants and /or conspired with them and/or acted in concert with them to violate plaintiff's rights as described herein.

27.    Defendants RICHARD ROES 1-10 are, or were at all times relevant to this complaint, NYPD commanders and/or supervisors employed by the NYPD. They are sued individually and in their official capacity. RICHARD ROES 1-10 include individuals, known to defendant City of New York and the New York City Police Department, who ordered the arrest of plaintiff and who created, implemented, promulgated, and/or enforced the policies, practices and/or customs complained of herein.

28.    Defendants BLOOMBERG, KELLY, COHEN ESPOSITO, GRAHAM, COLGAN, HAMMERMAN, DOEPFNER, MARIN-JORDAN, MCMANUS, O'CONNOR, GIOIA, UNDER COVER (Shield No.), WARD, DIRUSSO, JOHN, JOHN DOES 1-10, and RICHARD ROES 1-10 (collectively, "the individual defendants") are, or at all times relevant were, employees and/or agents of the City of New York. They include the individuals who directed and/or authorized the interference with, and/or prevention of, the plaintiff's expression of speech, protest, assembly and association, unreasonable arrest and detention and/or who actually arrested plaintiff, without probable cause, and who implemented the policies, practices and procedures to unreasonably detain the plaintiff.

29.     At all times relevant herein, each of the individual defendants acted under color of state law in the course and scope of his duties and functions as agent, employee, servant and/or officer of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, the individual defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

30.     At all times relevant herein, the individual defendants, have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, and the Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

## FACTS

### August 29, 2004 Arrest

31.     At or around 5:20 p.m. on August 29, 2004, plaintiff CRAIG ANDREW NEEF, a volunteer medic, was lawfully present in the vicinity of 46th Street and Times Square in Manhattan.

32.     At the aforementioned time and location, Mr. NEEF was standing on a traffic island in Times Square next to multiple media reporters and cameras.

33.     Mr NEEF was dressed in a vest with multiple red crosses on it, visibly identifying him as a medic.

34.     Mr. NEEF was speaking by cell phone to the volunteer medical center located at St. Mark's Church in the East Village.

35.     While Mr. NEEF was speaking, JOHN DOES/RICHARD ROES #1-6 approached him, violently placed him on the ground and handcuffed him with plastic flexcuffs.

36.     Mr. NEEF's arrest was affected without probable cause or reasonable suspicion to believe plaintiff had committed any crime or offense.

7

37.     At no time prior to his arrest did Mr. NEEF violate any law, regulation, ordinance, or any order of a police officer.

38.     At no time while Mr. NEEF was standing on the traffic island was he advised that he was in violation of any law or ordinance of the State or City of New York.

39.     At no time while Mr. NEEF was standing on the traffic island was he given an order or meaningful opportunity to disperse.

40.     Defendant UNDER COVER Officer (Shield No. 2406), defendant Police Officer RICHARD GIOIA and/or several other individual defendants JOHN DOES and/or RICHARD ROES did assist JOHN DOES/RICHARD ROES #1-6 and/or act in concert with them to perform the foregoing wrongful conduct, or did fail to intervene to stop the foregoing violations of plaintiff's constitutional rights.

41.     The wrongful arrest of plaintiff was ordered by defendant Sergeant SEAN O'CONNOR and/or one or more defendant ROE officers.

42.     Defendant RICHARD GIOIA was plaintiff's arresting officer.

43.     Plaintiff was removed to a police vehicle where his person was searched and his backpack was cut off of him and searched.

44.     Plaintiff was carrying no weapons or contraband.

45.     From Times Square, plaintiff NEEF was transported to and detained at Pier 57 in filthy and inhumane conditions for many hours before being taken to the Mass Arrest Processing Center ("MAPC") at 125 White Street, also known as Manhattan Central Booking.

46.     At Central Booking, plaintiff spent many hours handcuffed to other arrestees in crowded conditions, being shuffled from cell to cell.

47.     Pursuant to his August 29, 2004 arrest, plaintiff was detained for a total of approximately 30 hours under unreasonable conditions, including but not limited to, the following: 1) handcuffs applied for excessive periods of time; 2) unreasonable overcrowding; 3) inadequate facilities for sleeping and sitting, forcing plaintiff to come into intimate contact with

8

noxious substances, including, on information and belief, toxic chemicals at Pier 57; 4) deliberately indifferent exposure to dangerous chemicals in the air and on the walls and floor of Pier 57; 5) deliberately indifferent refusal to provide adequate restroom and sanitary facilities; 6) deliberately indifferent failure to provide food; and 7) refusal of access to a phone call and to legal counsel.

48.     Plaintiff was arraigned shortly after midnight on August 31, 2004.

49.     Upon information and belief, at his arraignment, plaintiff was charged with one count each of the misdemeanor offenses of conspiracy (Penal Law § 105.00), criminal mischief (Penal Law § 145.00), resisting arrest (Penal Law § 205.30), and obstruction of governmental administration (Penal Law § 195.05), and the violation of criminal solicitation (Penal Law § 100.00).

50.     The charges lodged against plaintiff were false and falsely sworn to under penalty of perjury by, upon information and belief, defendants SEAN O'CONNOR, RICHARD GIOIA and/or UNDER COVER (Shield No. 2406).

**August 31, 2004 Arrest**

51.     While in Union Square Park on the evening of August 31, 2004, plaintiff NEEF, along with others, decided to walk from the Park to the designated "Free Speech" zone outside of Madison Square Garden.

52.     Plaintiff and others proceeded north on Broadway to 17th Street, where they were directed by police to turn left and head east toward Fifth Avenue.

53.     Plaintiff and others complied with this direction.

54.     At Fifth Avenue, 17th Street was block by a police barricade.

55.     Plaintiff and others stopped at the barricade.

56.     The police informed plaintiff and others stopped at the barricade that the police were going to call their command center to find out how the pedestrians could proceed to Madison Square Garden.

57.     Plaintiff and others stopped at the barricade were ordered to form a line in the middle of 17th Street. They complied.

58.     A second barricade was erected east of the line, preventing plaintiff and others stopped on 17th Street from exiting the block.

59.     The police opened the barricade at Fifth Avenue. Officers on scooters came through the opening(s) and surrounded plaintiff and everyone in the line on 17th Street.

60.     Police moved plaintiff and others on 17th Street onto the south sidewalk, instructing them to get against the building wall.

61.     Plaintiff and others on the south sidewalk were handcuffed by police with flex cuffs at approximately 10 p.m.

62.     Plaintiff was arrested at the decision and order of defendants Inspector THOMAS DIRUSSO and Inspector KEVIN WARD.

63.     Plaintiff and others asked why they were being arrested but received no reply.

64.     Defendant P.O. RUSSELL JOHN was plaintiff's arresting officer.

65.     Plaintiff NEEF's arrest was affected without probable cause or reasonable suspicion to believe plaintiff had committed any crime or offense.

66.     At no time prior to his arrest on 17th Street did plaintiff NEEF violate any law, regulation, or ordinance, or any order of a police officer.

67.     At no time while plaintiff NEEF was standing on 17th Street was he advised that he was in violation of any law or ordinance of the State or City of New York.

68.     At no time while plaintiff NEEF was standing on 17th Street was he given an order or meaningful opportunity to disperse.

10

69.     Plaintiff and others arrested on 17th Street waited on the sidewalk for at least a half an hour before they were placed on a bus and taken to Pier 57.

70.     Plaintiff was once again detained overnight at Pier 57 in filthy and inhumane conditions before being taken to the MAPC at 125 White Street, also known as Manhattan Central Booking, at approximately 11:05 a.m. on September 1, 2004.

71.     At Central Booking, plaintiff again spent many hours handcuffed to other arrestees in crowded conditions, being shuffled from cell to cell.

72.     Pursuant to his August 31, 2004 arrest, plaintiff was detained for a minimum of approximately 41 hours under unreasonable conditions, including but not limited to, the following: 1) handcuffs applied for excessive periods of time; 2) unreasonable overcrowding; 3) inadequate facilities for sleeping and sitting, forcing plaintiff to come into intimate contact with noxious substances, including, on information and belief, toxic chemicals at Pier 57; 4) deliberately indifferent exposure to dangerous chemicals in the air and on the walls and floor of Pier 57; 5) deliberately indifferent refusal to provide adequate restroom and sanitary facilities; 6) deliberately indifferent failure to provide food; and 7) refusal of access to a phone call or to legal counsel.

73.     Plaintiff was arraigned at approximately 3 p.m. on September 2, 2004.

74.     Upon information and belief, at his arraignment, plaintiff was charged with one count of parading without a permit (New York Admin. Code § 10-110) and two counts of disorderly conduct (Penal Law §§ 240.20[5] & [6]).

75.     These charges were false and falsely sworn to under penalty of perjury by defendant P.O. RUSSELL JOHN who admits that he did not personally observe plaintiff NEEF until after he was already in handcuffs.

76.     The individual defendants' acts and omissions described above were intentional, wanton, willful and malicious, and were performed with deliberate indifference and/or in

11

reckless disregard of plaintiff NEEF's constitutional rights, entitling plaintiff to punitive damages.

77.     The actions complained of herein were part of and pursuant to a policy, custom, and/or practice of the City and/or the NYPD of stifling protest during the RNC by engaging in indiscriminate mass arrest of demonstrators, those perceived to be demonstrators, and those merely in the vicinity of demonstrators, without individualized suspicion or probable cause.

78.     The mass arrest policy utilized by the defendants during the week of the RNC substantially chills the exercise of First Amendment rights. When the police arrest large numbers of people engaged in lawful activity at or near demonstrations, those arrested are far less likely to be comfortable engaging in future protest activity. Moreover, when such arrests take place at such a highly publicized event as the RNC, the public at large is given the message that participation in protest activity is criminal and likely to lead to arrest. This "criminalization" of dissent and protest lies at the heart of the defendants' mass arrest policy and the other policies alleged herein.

79.     Each of the actions complained of herein was part of and pursuant to a policy, custom, and/or practice of the City and/or NYPD of stifling protest during the RNC by failing to properly screen, train, supervise, discipline and/or monitor police officers with respect to the rights of demonstrators, those perceived to be demonstrators, and those merely in the vicinity of demonstrators.

80.     The filthy, unhealthy, and dangerous conditions at Pier 57, and the excessive length of time plaintiff was held in custody, *inter alia*, were part of and pursuant to a policy, custom, and/or practice of the NYPD and/or the City of stifling protest during the RNC by failing to properly screen, train, supervise, discipline and /or monitor police officers with respect to the rights of demonstrators, those perceived to be demonstrators, and those merely in the vicinity of demonstrators, and/or by encouraging, ratifying, sanctioning, and/or acting with deliberate indifference toward threats to the health, safety, and rights of such individuals.

81.     Located on the west side of Manhattan, Pier 57 had been used up until September 7, 2003 by the Metropolitan Transit Authority ("MTA") as a storage and repair facility for City buses, after which time it sat empty and unused until the RNC. An environmental report prepared by Ove Arup & Partners Consulting Engineers PC in April of 2004 stated that Pier 57's "electrical and life safety systems have code deficiencies, are in poor physical conditions and in need of replacement," "key components of the existing plumbing and fire protection systems have code deficiencies and/or are in poor physical condition and are in need of replacement," and "there was oily waste visible throughout the street level of the facility."

82.     A Preliminary Asbestos and Lead Paint Inspection Report for Pier 57 compiled by environmental consultants AKRF, Inc. in May 2004 estimated the "costs associated with establishment of basic building services and life safety systems and environmental cleanup of asbestos, lead and contaminated soils, spills, tanks and miscellaneous equipment" to total $33,690,302, including $65,000 to "remove oil staining on concrete floors throughout," and $1,000 to "remove hazardous waste storage bins and tubs."

83.     Not until July 28, 2004, one month before the RNC, did defendants CITY OF NEW YORK, BLOOMBERG, KELLY, COLGAN and others enter into an agreement with the Hudson River Park Trust, the entity that had purchased Pier 57 from the MTA, to use this filthy, hazardous and dangerous setting as a detention facility, knowing that it would be unfit for human occupancy by the time of the RNC.

84.     Defendants began preparing Pier 57 for use as a human detention facility only approximately one week before the RNC and, on information and belief, defendants never obtained a certificate of occupancy for Pier 57. The defendants constructed multiple holding cells inside Pier 57 using chain-link fence topped with razor wire. Each cell had two sections, one in which arrestees were kept, and another, buffer zone, which contained two portable toilets and a water cooler.

13

85. Plaintiff NEEF was held on two occasions for many hours at Pier 57 in holding cells that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, forcing plaintiff and others to sit or lay on the floor, thus coming into contact with the dirt, oil and chemicals coating it.

86. Further, Pier 57 was not equipped with any phones from which plaintiff and other RNC arrestees could call their families, friends or employers to notify them that they had been arrested. Arrestees' cell phones were rendered inaccessible to them at their arrest sites and were then confiscated when arrestees first entered the Pier. This meant that both times plaintiff was arrested, he was denied access to a telephone until sometime after he reached 125 White Street (the Mass Arrest Processing Center ("MAPC")).

87. The restroom and sanitary facilities at Pier 57 were grossly inadequate. The restrooms for arrestees consisted of port-o-johns, often one for a hundred or more detainees. Arrestees had no way to wash their hands after using the restroom or after touching the soot and oil covered floors, which, as explained above, was frequently the only place to sit during the hours arrestees were held at the Pier. This meant that arrestees who wished to eat the little food that was provided at Pier 57 were forced to touch their food with soiled and dirty hands before ingesting it.

88. While at Pier 57, and later at 125 White Street/MAPC, plaintiff was denied access to an attorney.

89. Plaintiff was subjected to excessive and unnecessary handcuffing with plastic flex cuffs.

90. During the RNC, defendants CITY OF NEW YORK, BLOOMBERG, KELLY, COHEN, ESPOSITO, GRAHAM, COLGAN, HAMMERMAN, DOEPFNER, MARIN-JORDAN, MCMANUS and ROE defendants designed and implemented a policy, practice or custom of detaining the plaintiff and other RNC arrestees, without justification, for unnecessary and prolonged periods of time, thereby preventing them from participating in further

14

demonstration or protest activity, or from simply going on with their lives. In particular, the defendants implemented arrest procedures which were intended to and did ,in fact, unreasonably prolong and extend the period of time that plaintiff and other RNC arrestees were held in custody following their arrests. These procedures included, *inter alia*, the adoption of a "no summons" policy under which everyone arrested in connection with an actual or perceived RNC protest event, no matter how minor the infraction, would be subject to a custodial arrest, rather than being issued a summons on the street; the fingerprinting of all those arrested, even for minor offenses for which fingerprinting is unnecessary; the use of Pier 57 as the Post Arrest Staging Site ("PASS") without fingerprinting or LiveScan capability; the detailed listing of the possessions of all those arrested (which first required the arresting/assigned offices to cull through large piles of arrestees' belongings to locate their property); having counsel from the NYPD Legal Bureau review each arrest and assist in the preparation of the arresting officers' memobook entries and on-line booking worksheets before the paperwork was sent to the Office of the District Attorney, including instructing and assisting arresting officers to create false accounts of the plaintiff's and other detainees' arrests; repeatedly moving the arrestees from cage to cage at Pier 57, then from Pier 57 to Central Booking, and finally from cell to cell within Central Booking; and requiring that the results of a criminal background check from both New York State Division of Criminal Justice Services ("DCJS") and the Federal Bureau of Investigation ("FBI") be received by the Manhattan Court Section before plaintiff and other RNC arrestees could be arraigned. All of these procedures were intended to, and did, unnecessarily and unreasonably extend and prolong the period of time that plaintiff was held in custody.

91.     Moreover, plaintiff, on his second arrest, and the overwhelming majority of the more than 1,800 people who were arrested in connection with the RNC were detained for only alleged violations, such as disorderly conduct and parading without a permit. Under New York Criminal Procedure Law § 160.10, alleged violations do not require the taking of arrestees' fingerprints prior to their release from custody with a summons or a Desk Appearance Ticket

15

unless the arrestee lacks valid identification. The defendants' decision not to issue any summons and to fingerprint all persons arrested in connection with an actual or perceived RNC protest event, including those arrested for only violations who possessed valid identification, resulted in excessive delays in plaintiff's release and the improper entry of his fingerprints into City, state and federal government databases.

92.     The unconstitutional arrests of large numbers of individuals who were not in violation of any law or regulation of the State or City of New York were affected in order to create a pretext for the lengthy and punitive detentions of people arrested.

93.     Review by NYPD Legal Bureau and Criminal Justice Bureau ("CJB") personnel of arresting/assigned officers' paperwork before it was shown to the District Attorneys' office, including the Legal Bureau's instructing and assisting arresting officers to create false accounts of the plaintiff's and other detainees' arrests, was part of and pursuant to a policy, custom, and/or practice of the NYPD and/or the City of stifling protest during the RNC.

94.     Said policies, customs and/or practices were created, designed, implemented, enforced and/or ratified on behalf of defendant CITY OF NEW YORK and the NYPD by individual defendants KELLY, BLOOMBERG, COHEN, ESPOSITO, GRAHAM, COLGAN, HAMMERMAN, DOEPFNER, MARIN-JORDAN, MCMANUS and ROE defendants.

95.     As a direct and proximate result of the foregoing actions, including defendants' wrongful polices, practices, customs and/or usages complained of herein, plaintiff NEEF has suffered physical injury, pain, and suffering, mental anguish, embarrassment, humiliation, and emotional distress, deprivation of liberty, and other expenses.

### FIRST CAUSE OF ACTION
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

96.     Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

97.     The actions and conduct and the policies, practices and customs of the defendants in subjecting the individually named plaintiffs to false arrest, malicious prosecution, malicious abuse of criminal process, excessive and unreasonable force, including without limitation excessive and unreasonable handcuffing, and excessive and unreasonable seizure, excessive detention, cruel and inhumane conditions of detention and denial of access to counsel, violated the plaintiff's constitutional and civil rights as guaranteed under the Civil Rights Act of 1871, 42 U.S.C. §1983, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

98.     As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff NEEF suffered injury and damages including, *inter alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

## SECOND CAUSE OF ACTION
## MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FIRST AMENDMENT

99.     Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

100.     By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia*, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful , peaceful demonstrators off the streets during the height of the RNC, requiring, in violation of New York Criminal Procedure Law § 160.10, that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and whether arrestees possessed valid identification, and subjecting those arrested to intolerable, cruel and inhumane conditions, the defendants, acting under pretence and color of state law and in their individual and official capacities and within the scope of their employment deprived plaintiff NEEF of rights, remedies, privileges and immunities guaranteed to every citizen of the

17

United States, in violation of rights guaranteed by the First Amendment of the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. § 1983.

101.   As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff NEEF suffered injury and damages including, *inter alia,* deprivation of liberty, physical and mental pain, suffering and mental anguish.

### THIRD CAUSE OF ACTION
### MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FOURTH AMENDMENT

102.   The plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

103.   By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia,* engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring, in violation of New York Criminal Procedure Law § 160.10, that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and whether arrestees possessed valid identification, and subjecting those arrested to intolerable, cruel and inhumane conditions, the defendants, acting under pretence and color of state law and in their individual and official capacities and within the scope of their employment deprived plaintiff NEEF of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Fourth Amendment of the United States Constitution,, and 42 U.S.C. §1983.

104.   As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff NEEF has suffered and will continue to suffer injury and damages including, *inter alia,* physical and mental pain, suffering and mental anguish.

18

**FOURTH CAUSE OF ACTION**
**MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FOURTH & SIXTH AMENDMENT**

105.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

106.    By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia,* engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring, in violation of New York Criminal Procedure Law § 160.10, that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and whether arrestees possessed valid identification, and subjecting those arrested to intolerable, cruel and inhumane conditions, the defendants, acting under pretence and color of state law and in their individual and official capacities and within the scope of their employment and have deprived and will continue to deprive plaintiff NEEF of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Fifth and Sixth Amendments of the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. § 1983.

107.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff NEEF suffered injury and damages including, *inter alia*, deprivation of liberty, physical and mental  pain, suffering and mental anguish.

**FIFTH CAUSE OF ACTION**
**MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT**

108.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

109.    By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia,* engaging in

indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring, in violation of New York Criminal Procedure Law § 160.10, that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and whether arrestees possessed valid identification, and subjecting those arrested to intolerable, cruel and inhumane conditions, the defendants, acting under pretence and color of state law and in their individual and official capacities and within the scope of their employment deprived plaintiff NEEF of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

110.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff NEEF suffered injury and damages including, *inter alia*, deprivation of liberty, physical and mental  pain, suffering and mental anguish

### SIXTH CAUSE OF ACTION
### MUNICIPAL LIABILITY - DISCRIMINATORY ENFORCEMENT OF
### UNCONSTITUTIONAL PARADING STATUTE - N.Y ADMIN. CODE § 10-110

111.    New York City Administrative Code states in relevant part that "[a] procession, parade or race shall be permitted upon any street or in any public place only after a written permit therefore has been obtained from the police commissioner." Participation "in any procession, parade, or race, for which a permit has not been issued when required by this section" is punishable by a fine of up to $25 or up to 10 days in jail or both.

112.    Section 10-110 does not define the terms "procession, parade or race." During the relevant period, the NYPD defined a "parade or procession" as "any march, motorcade, caravan, promenade, foot or bicycle race, or similar event of any kind, upon any public street or roadway." 38 RCNY § 19-02(a).

20

113.     During the relevant period, the NYPD engaged in a policy, practice and/or custom of enforcing New York City Administrative Code § 10-110 against people arrested at or in the vicinity of RNC-related protest events.  During the relevant period as many as 794 RNC-related arrestees were arrested for and charged with Parading without a Permit, including plaintiff NEEF.

114.     Section 10-110, both on its face and as interpreted and applied by the NYPD during the relevant period, is unconstitutionally vague, impermissibly overbroad and improperly applies strict liability.  During the relevant period, the NYPD, a subdivision of defendant CITY OF NEW YORK, also interpreted and applied Section 10-110 in a discriminatory and unequal fashion against those arrested at or in the vicinity of RNC-related protest events.

115.     By adopting, maintaining and implementing the policy, practice and/or custom of enforcing an unconstitutional law, and enforcing it in a discriminatory manner, defendant CITY OF NEW YORK, deprived plaintiff NEEF of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. § 1983.

116.     As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff NEEF suffered injury and damages including, *inter alia*, deprivation of liberty, physical and mental  pain, suffering and mental anguish.

## SEVENTH CAUSE OF ACTION
### MUNICIPAL LIABILITY - DISCRIMINATORY ENFORCEMENT OF UNCONSTITUTUIONAL NEW YORK STATE PENAL LAW § 240.20

117.     The plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

118.     New York State Penal Law § 240.20 states in relevant part that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or

21

alarm, or recklessly creating a risk thereof . . . 5. He obstructs vehicular or pedestrian traffic; or 6.

He congregates with other persons in a public place and refuses to comply with a lawful order of

the police to disperse." Disorderly conduct is a violation.

119.    During the RNC, the NYPD, a subdivision of defendant CITY OF NEW YORK,

engaged in a policy, practice and/or custom of interpreting and applying New York State Penal

Law §§ 240.20[5] & [6] in a discriminatory and unequal fashion against people arrested at or in

the vicinity of RNC-related protest events.  During the relevant period at least 548 RNC-related

arrestees, including plaintiff, were arrested for and charged with disorderly conduct.

120.    By adopting, maintaining and implementing the policy, practice and/or custom of

interpreting and applying sub-sections 240.20[5] & [6] in a discriminatory and unequal manner,

defendant CITY OF NEW YORK deprived plaintiff NEEF of rights, remedies, privileges and

immunities guaranteed to every citizen of the United States, in violation of the First, Fourth and

Fourteenth Amendments to the United States Constitution, as incorporated against municipal

actors under the Fourteenth Amendment, and 42 U.S.C. § 1983.

121.    As a direct and proximate result of the misconduct and abuse of authority

described above, plaintiff suffered injury and damages including, *inter alia*, deprivation of

liberty, physical and mental pain, suffering and mental anguish.

### EIGHTH CAUSE OF ACTION
### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND U.S.C. § 1981 AND 1983

122.    The plaintiff realleges and incorporates by reference each and every allegation

above as if fully set forth herein.

123.    Defendants BLOOMBERG, KELLY, COHEN, HAMMERMAN, DOEPFNER,

MARIN-JORDAN, MCMANUS, ESPOSITO, GRAHAM, COLGAN, O'CONNOR, WARD and

DIRUSSO, acting under pretence and color of state law and in their individual and official

capacities and within the scope of their employment, failed to remedy the wrongs committed by

employees of defendant CITY OF NEW YORK under their supervision, and failed to properly

22

train, supervise or discipline employees of the CITY OF NEW YORK under their supervision, including, *inter alia*, with respect to indiscriminate mass arrests which were unlawful and without probable cause, the creation of perjured sworn statements to attempt to justify those unlawful arrests, preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring, in violation of New York Criminal Procedure Law § 160.10, that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and whether arrestees possessed valid identification, and subjecting those arrested to intolerable, cruel and inhumane conditions, thereby depriving plaintiff NEEF of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983.

124.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff NEEF suffered injury and damages including, *inter alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all defendants:

A.    a declaration that defendants violated the federal rights of plaintiff;

B.    a declaration that New York City Admin. Code § 10-110 is unconstitutional both on its face and as applied to plaintiff;

C.    a declaration that New York Penal Law §§ 240.20[5] & [6] are unconstitional as applied to plaintiff;

D.    an order requiring the NYPD to return or destroy all fingerprints, in whatever form existent, taken of the plaintiff and to request that any other law enforcement agency to which the NYPD transmitted those fingerprints, including without limitation the New York State Division of Criminal Justice Services and the FBI, likewise return or destroy them;

E.    an order requiring the NYPD to destroy and/or expunge all of plaintiff's RNC arrest records, including all law enforcement records or database entries referencing plaintiffs RNC arrests, and ordering the NYPD to request that any other law enforcement agency it informed of plaintiff's RNC arrests, including without limitation the New York State Division of Criminal Justice Services and the FBI, do the same;

D.    compensatory damages for physical, emotional, and economic injuries suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount to be determined at trial;

E.    punitive damages against the individual defendants to the extent allowable by law;

F.    attorneys fees;

G.    the costs and disbursements of this action; and

H.    such other and further relief as appears just and proper.


Dated:    New York, New York
            August 29, 2007


Respectfully submitted,


JONATHAN C. MOORE (JM 6902)
CLARE NORINS (CN 2821)

**Beldock Levine & Hoffman LLP**
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400

*Attorneys for the Plaintiff*